J-A16015-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| MICHELLE HOVIS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| GREGORY HOVIS | : | |
| | : | |
| Appellant | : | No. 512 MDA 2022 |

Appeal from the Order Entered March 23, 2022
In the Court of Common Pleas of Adams County
Civil Division at No(s):  2022-SU-0000213

BEFORE:  PANELLA, P.J., BENDER, P.J.E., and McCAFFERY, J.

MEMORANDUM BY PANELLA, P.J.:                **FILED: SEPTEMBER 22, 2023**

Gregory Hovis ("Husband") appeals from the order entered in the Adams County Court of Common Pleas on March 23, 2022, granting a final protection from abuse ("PFA") order in favor of Michelle Hovis ("Wife").[1] After careful review, we affirm the PFA order, but vacate the provision requiring Husband to turn over a check to Wife's attorney.

On March 10, 2022, Wife filed a PFA petition. The trial court conducted an *ex parte* proceeding on the petition that same day, after which the court entered a temporary PFA order pending a hearing on the petition. The order excluded Husband from the marital home, prohibited all contact with Wife,

_____

[1] We note that divorce proceedings were initiated between the parties. However, at the time of the hearing in this matter, they were still married, even if separated. *See* N.T., 3/23/2022, at 6. For ease of reference, we will refer to them as Husband and Wife in this memorandum.

and ordered Husband to relinquish his firearms. Relevantly, Husband was also ordered to turn over Wife's disability check that was deposited on March 9, 2022, into a shared account that Wife did not have access to. Husband was directed to provide this check to Wife's lawyer.

On March 23, 2022, a PFA evidentiary hearing was held. The trial court summarized the testimony from the hearing as follows:

> [Wife] and [Husband] were married and resided at 590 Gum Springs Road, Fairfield, Adams County, Pennsylvania 17320. During February 2022, [Wife] was living outside of the marital residence. On February 28, 2022, [Wife] returned to the marital residence and advised [Husband] that she was having an affair. [Husband] subsequently took [Wife]'s keys to her car and locked them in a safe in the marital residence. [Husband] advised [Wife] she was not allowed to leave the marital residence. However, [Husband] agreed to transport [Wife] to a dental appointment and transported [Wife] back to the marital residence. [Wife] fully advised [Husband] concerning her affair, and [Wife] and [Husband] discussed counseling. Both [Wife] and [Husband] slept on the couch at the marital residence on the night of February 28, 2022.
>
> On the morning of March 1, 2022, after [Husband] woke [Wife], [Wife] observed [Husband] possessing loaded handguns and acting irrationally. [Husband] threatened to kill himself and advised [Wife] "If I can't have you, no one can have you." [Wife] attempted to engage [Husband] in conversation and offered to call a counselor to initiate counseling, but [Husband] did not agree. [Wife] was able to text her brother, Steve King, and texted "gun help."
>
> Approximately 15 minutes later, the parties heard noise outside, and [Wife] exited the marital residence. [Wife] observed the police down the hill from the marital residence. The police directed [Wife] to run toward them, and she complied.
>
> [Husband] exited the marital residence several minutes later. Once outside, [Husband] was confronted by police, who took him into custody and seized a loaded handgun from his back pocket.

[Husband] was transported to Gettysburg Hospital where he was committed pursuant to the Mental Health Procedures Act.

[Wife]'s brother, Steve King, testified that on March 1, 2022, he received a text message from [Wife] that stated "gun help." Written documentation of the [text] message was admitted during the PFA hearing. Steve King [traveled] towards the marital residence and called 911 while en route. Mr. King alerted 911 about [Wife]'s text message and his concerns for [Wife]'s safety. Mr. King observed the police arrive at the marital residence and ultimately take [Husband] into custody.

[Husband] testified concerning the events of February 28, 2022[,] and March 1, 2022. [Husband] admitted that [Wife] advised him of her affair and that he placed [Wife]'s car keys in the safe. [Husband] denied threatening suicide on March 1, 2022[,] or threatening [Wife] with the handgun. [Husband] testified he had the loaded handgun in his back pocket when he was taken into custody by the police on March 1, 2022, and that police seized the handgun.

Trial Court Opinion, 5/27/2022, at 2-4. The trial court noted that it found Wife's testimony credible and did not find Husband's testimony credible. *See id*. at 4. Following the hearing, a final PFA order was entered. The order was issued for a term of one year, to expire on March 23, 2023, and included the same protections as the temporary order. The order also directed Husband to provide Wife's disability check to her lawyer. This timely appeal followed.

On appeal, Husband raises the following two issues:

1. Did the trial court abuse its discretion and commit an error of law when it found [Wife] was credible and [Husband] was not credible despite the impeachment of [Wife] without rehabilitation thus granting a final order of protection to [Wife]?

2. Did the trial court err when it issued a final order that required [Husband] to "turn over disability check" to [Wife]'s private attorney when no evidence of a disability check was presented during the entirety of the final hearing?

Appellant's Brief, at 9-10.

In his first issue, Husband challenges the credibility determinations of the trial court. Specifically, he contends that he impeached Wife, and she was not rehabilitated, so a PFA order should not have been entered in her favor.

At the PFA hearing, Husband attempted to impeach Wife with a prior statement included in the PFA petition. **See** N.T., 3/23/2022, at 12. Specifically, Husband highlights a conflict between Wife's prior statement that Husband would not let her spend money with Wife's testimony admitting that she had purchased various food and cosmetic items prior to February 28, 2022. **See** Appellant's Brief, at 18. The court allowed the line of questioning, but expressed its confusion over how this would lead to impeachment. **See** N.T., 3/23/2022, at 12-13. After significant back and forth between Husband's counsel and the court, regarding whether counsel's questions were relevant, counsel eventually entered an oral motion for a directed verdict. **See id**. at 37. After the court immediately denied the motion, Husband's counsel asserted that Wife was impeached without rehabilitation and therefore there was no credible testimony to substantiate her claims. **See id**. In response, the court was clear that it did not find any such impeachment had occurred. **See id**. ("You have a much different opinion as to the impact of your cross-examination then I do.").

A witness is not impeached merely because a defendant states they have been. Husband argues that this Court must "review the record in the

light most favorable to the Plaintiff…." Appellant's Brief, at 18. However, it is well settled that the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder. **See Mescanti v. Mescanti**, 956 A.2d 1017, 1020 (Pa. Super. 2008). In reviewing the validity of a PFA order, this Court must view the evidence in the light most favorable to the party who prevailed before the trial court and grant her the benefit of all reasonable inferences. **See S.W. v. S.F.**, 196 A.3d 224, 228 (Pa. Super. 2018). And we must defer to the trial court's determination of the credibility of witnesses at the hearing. **See id**.

Here, the trial court repeatedly and explicitly indicated that it found Wife's testimony credible and did not find Husband's testimony credible. **See** N.T., 3/22/2022, at 84; **see also** Trial Court Opinion, 5/27/2022, at 4. Husband makes no attempt to outline how these credibility determinations constitute an abuse of discretion. Rather, he argues that this Court, reviewing a cold record, should simply ignore the trial court's explicit credibility determinations. Given our well-settled deference to the trial court on credibility, no relief is due.

In his second issue, Husband challenges a provision in the PFA order requiring Husband to turn over a disability check of Wife's to her attorney. Husband argues that no evidence was presented at the hearing to establish the existence of this check. **See** Appellant's Brief, at 22. After a close review of the transcript, we conclude that Husband accurately describes the state of

the record. While the temporary, ex parte PFA order contains the same provision, there is no mention of this check at the subsequent hearing, despite the fact that Wife was represented by counsel.

The trial court, while acknowledging that Husband raised the issue in his 1925(b) statement of errors, does not address the issue in its opinion on appeal. Wife contends that since the *ex parte* PFA order contained a similar provision, Husband had "ample notice" of the issue. *See* Appellee's Brief, at 13. However, whether Husband had notice of Wife's request is not relevant to the question of whether Wife met her burden of establishing her right to relief by a preponderance of the evidence. *See S.G. v. R.G.*, 233 A.3d 903, 909 (Pa. Super. 2020) (noting that under the PFA act, the petitioner's burden to establishing relief is "by a preponderance of the evidence." (citation omitted)). In the absence of any evidence of record regarding the check, we are required to vacate that provision of the final PFA order.

We note, however, that after appeal the parties entered into an agreed order of court whereby Husband would pay Wife $1750 in eight biweekly payments as satisfaction of this provision in the final PFA order. The order indicated that "[n]othing about this Order shall waive any issues raised on appeal in this matter or waive any claims or defenses in Equitable Distribution in the pending Divorce matter of the parties." Order of Court, 5/24/2022. Further, the lack of any evidence of record regarding the alleged check leaves us in no position to even hypothesize what should be done going forward.

Under these circumstances, our action in vacating the relevant provision of the PFA order leaves the parties where they now stand, without any prejudice to Husband's right to seek a credit for this sum in the divorce proceedings or initiate a new proceeding seeking return of this property. In either case, it will be Husband's burden to establish his right to such relief under the applicable law.

Based upon the foregoing, we affirm the PFA order, but vacate the provision requiring Husband to turn over a check to Wife's attorney.

Order affirmed in part and vacated in part. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/22/2023