J-S07016-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| ASHLEY LYNN BULLERS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIK MICHAEL LAWYER | : | |
| | : | |
| Appellant | : | No. 1033 MDA 2023 |

Appeal from the Order Entered June 21, 2023
In the Court of Common Pleas of Cumberland County Civil Division at
No(s): 2023-02655

BEFORE: LAZARUS, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED MAY 09, 2024**

Erik Michael Lawyer (Appellant) appeals the order granting the petition filed by his former intimate partner, Ashley Lynn Bullers (Appellee), pursuant to the Protection From Abuse (PFA) Act. ***See*** 23 Pa.C.S.A. §§ 6101-6117. Appellant claims the three-year duration of the protection order was unwarranted. ***See*** § 6108(d). Separately, Appellant claims the court erred when it ordered him to compensate Appellee for her loss of earnings as a result of the abuse. ***See*** § 6108(a)(8). We affirm.

The record discloses the following history. Appellee filed a PFA petition against Appellant on March 29, 2023. The petition alleged:

> On the evening of March 26, 2023, [Appellee and Appellant] were staying in a hotel room in Ocean City[, Maryland]. [Appellant] had been drinking heavily that night. When the parties returned to the room, sometime after 12:00 a.m.,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[Appellant] assaulted [Appellee]. [Appellee] cannot remember the events that took place but was covered in injuries and blood and was running from [Appellant]. [Appellee] has numerous bruises all over her body, two black eyes, and a gash on her nose and forehead. [Appellant] was arrested for second degree assault.

Due to the [Appellant's] violent actions, [Appellee] fears for her safety and is requesting a Protection From Abuse Order.

Trial Court Opinion, dated 9/12/23, (T.C.O.) at 1 (quoting "Petition for Protection From Abuse," filed March 29, 2023) (style adjusted).

Appellee appeared before a trial court judge for an *ex parte* hearing, after which a temporary PFA order was issued. The final PFA hearing was ultimately held before a different judge on June 21, 2023.

Appellee testified that Appellant beat her while on vacation. She said that she had bruises all over her back, buttocks, legs, arms, and face; she offered exhibits showing images of her injuries. Appellee testified that she ran down to the hotel lobby and called 911 after the incident. Appellant was criminally charged, but he was found not guilty following a bench trial in Maryland.

In his version of events, Appellant testified that Appellee had been abusive to him previously. Both parties testified that their relationship had been volatile. Appellant said the parties were intoxicated on the night of the incident in question; he attempted to leave the hotel room during an argument; Appellee prevented him from leaving by grabbing and biting him; and he "unintentionally caught her in the face with his right hand." **See** T.C.O. at 4 (citing N.T., 6/21/23, at 23).

Appellee, who works as a sales associate in a large retail store, testified that she missed over a month of work. She said she did not want to work with bruises on her face and she had to take time off for doctor's appointments and court appearances. Appellee claimed she missed 140 hours of work, totaling $2,100 in lost wages. On cross-examination, Appellee conceded that she was physically able to work, and that her employer told her it was up to her whether she wanted to work. However, Appellee also testified that the employer told her it was not appropriate for her to be with customers given her appearance. The employer did not offer Appellee another position or accommodation while her injuries healed.

Following the hearing, the trial court determined that a preponderance of the evidence supported Appellee's allegation of abuse. The trial court granted her petition for a three-year PFA order and awarded $1,230 in lost wages; the court determined that Appellee should be compensated for missing 82 hours of work, not 140. *See* Order of Court, 6/23/23.

Appellant timely filed this appeal. He presents two issues for our review:

1. Whether it was an error to issue a PFA [order] for a three-year period? More specifically, whether there was sufficient evidence to support a PFA of three years based upon one isolated incident with no evidence of an ongoing threat?

2. Whether the calculation of restitution was supported by sufficient evidence? More specifically, whether [Appellee's] injuries were of the type that prevented her from working and whether she should have been required to show some proof of wages and hours worked?

- 3 -

Appellant's Brief at 6.

"In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion." *K.B. v. Tinsley*, 208 A.3d 123, 127 (Pa. Super. 2019) (citation omitted). "An abuse of discretion is more than just an error in judgment, and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Ferko-Fox v. Fox*, 68 A.3d 917, 925 (Pa. Super. 2013). "This Court defers to the credibility determinations of the trial court as to witnesses who appeared before it." *K.B.*, 208 A.3d at 128. We are not entitled to reweigh the evidence. *Id.* at 130 (citing *C.H.L. v. W.D.L.,* 214 A.3d 1272, 1276-77 (Pa. Super. 2019)).

When a claim is presented on appeal that the evidence was not sufficient to support an order of protection from abuse, we review the evidence in the light most favorable to the petitioner and granting her all reasonable inferences, determine whether the evidence was sufficient to sustain the trial court's conclusion by a preponderance of the evidence. *B.K.P. v. J.R.B.*, 303 A.3d 456, 459 (Pa. Super. 2023) (citing *E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020)); *S.W. v. S.F.*, 196 A.3d 224, 228 (Pa. Super. 2018). It is well-settled that a PFA petitioner's testimony alone, if believed by the trial court, may constitute sufficient evidence. *See E.K.,* 237 A.3d at 523 (citing *Custer v. Cochran*, 933 A.2d 1050, 1058 (Pa. Super. 2007) (*en banc*)).

The PFA Act is designed to shield a protected party from violence, sexual abuse, or other abuse. ***Buchhalter v. Buchhalter***, 959 A.2d 1260, 1262 (Pa. Super. 2008) (citations omitted). The Act does not seek to determine criminal culpability; a petitioner need not establish abuse occurred beyond a reasonable doubt, only by a preponderance of the evidence. ***K.B.***, 208 A.3d at 128 (citation omitted); ***see also*** 23 Pa.C.S.A. § 6107(a). The preponderance of the evidence standard "is defined as the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." ***Ferri v. Ferri***, 854 A.2d 600, 603 (Pa. Super. 2004) (citing ***Commonwealth v. Brown***, 786 A.2d 961, 968 (Pa. 2001)).

The PFA defines "abuse," in relevant part, as follows:

> The occurrence of one or more of the following acts between family or household members, sexual or intimate partners or persons who share biological parenthood:
>
> > (1)　Attempting to cause or intentionally, knowingly or recklessly causing bodily injury, serious bodily injury, rape, involuntary deviate sexual intercourse, sexual assault, statutory sexual assault, aggravated indecent assault, indecent assault or incest with or without a deadly weapon.

23 Pa.C.S.A. § 6102(a)(1).

As for the duration of the protection order, the Act provides:

> A protection order…shall be for a fixed period of time not to exceed three years. The court may amend its order or agreement at any time upon subsequent petition filed by either party.

23 Pa.C.S.A. § 6108(d).

In his first issue, Appellant evidently concedes that the evidence was sufficient to grant a PFA order; however, he claims there was insufficient evidence to warrant a three-year order – the statutory maximum amount of the time under Section 6108(d). *See* Appellant's Brief at 13-14. Appellant recognizes that this subsection provides no instruction as to how the court should determine the duration of the order. However, he suggests that the more egregious the abuse, the longer the duration of the protection. Appellant cannot cite any authority for this proposition, but he suggests that we adopt the standard for extending protection orders. *See* § 6108(e).

Under this provision, a protection order may be extended "[w]here the court finds…that the defendant committed one or more acts of abuse subsequent to the entry of the final order or that the defendant engaged in a pattern or practice that indicates continued risk of harm to the plaintiff[.]" *See* § 6108(e)(1)(i). Thus, according to Appellant, because the abuse in question arose from an "isolated incident," as opposed to a pattern suggesting a continued risk of harm, the three-year duration of the instant protection order was improper.

Appellant's reliance on Section 6108(e) is misplaced; the language set forth in that subsection only relates to an extension of protection – it does not relate to the duration of the original final protection order, under Section 6108(d). Importantly, Appellant's argument overlooks the trial court's authority to award a three-year order once it determines that the abuse occurred. In other words, there is sufficient evidence to award a three-year

PFA order, if there is sufficient evidence to award any order.  What Appellant means to argue is that the court's decision was against the **weight** of the evidence – *i.e.*, that the facts and circumstances in this case do not justify a three-year order.[1]

A challenge to the weight of the evidence implicates the trial court's discretion. **See, e.g., K.B.**, 208 A.3d at 129-30, n.4 (noting appellate review of weight claim is a review of the trial court's exercise of discretion); **see also Commonwealth v. Antidormi**, 84 A.3d 736 (Pa. Super. 2014) (setting forth distinct standards of review for weight and sufficiency of the evidence claims).

Trial courts have discretion as to how long the initial protection order should last.  Although a trial court could abuse that discretion, that is certainly not the case here.  The court determined that Appellant physically abused Appellee.  Appellant admitted that he was the cause of some of Appellee's physical bodily injuries, but he maintained he hit Appellee unintentionally.  The court did not find Appellant's excuses to be credible.  Rather, the court determined that Appellant "extremely minimized his contact, and his testimony did not support the extent of [Appellee's] injuries."  T.C.O. at 8.

---

[1] Although Appellant misnames his issue as a sufficiency claim, we decline to find waiver.  The Statement of Questions Involved and the Concise Statement of Matters Complained of on Appeal both reference the **sufficiency** of the evidence.  However, the headers within the argument section of the Appellant's Brief reference the **weight** of the evidence.  In the body of the text, it is clear Appellant means to set forth a weight claim.  We caution counsel that weight and sufficiency claims are not interchangeable.

Meanwhile, Appellee provided photographs of her injuries and testified that she had to miss work until her wounds healed.

As noted above, this Court defers to the credibility determinations of the trial court, who observed the witnesses firsthand; we may not reweigh the evidence as to witnesses who appeared before it. **K.B.**, 208 A.3d at 128, 230. Given the nature of the abuse, Appellee's physical injuries, and the volatile history of their relationship, we conclude that the court did not abuse its discretion when it issued a three-year protection order. Appellant's first issue is without merit.[2]

Next, Appellant claims the that the trial court erred when it ordered Appellant to reimburse Appellee for her lost earnings. **See** Appellant's Brief at 14-15. Section 6108(a)(8) provides that a protection order may include **inter alia** a provision:

> (8) Directing the defendant to pay the plaintiff for **reasonable losses suffered as a result of the abuse**, **including** medical, dental, relocation and moving expenses; counseling; **loss of earnings** or support; costs of repair or replacement of real or personal property damaged, destroyed or taken by the defendant or at the direction of the defendant; and other out-of-pocket losses

---

[2] Even if we applied the law as Appellant suggests, we would conclude he merits no relief. First, Appellant's argument presupposes that the abuse was an isolated incident. However, both parties testified that their relationship was volatile, which suggests that there was a pattern indicative of a continued risk of harm. Second, supposing that there was "only" one incident of abuse, there would still be indication of a continued risk of harm. That multiple incidents might be **more** indicative of continued risk does not mean that a single incident of abuse lacks indication of future harm or threat of future harm.

for injuries sustained. In addition to out-of-pocket losses, the court may direct the defendant to pay reasonable attorney fees. An award under this chapter shall not constitute a bar to litigation for civil damages for injuries sustained from the acts of abuse giving rise to the award or a finding of contempt under this chapter.

23 Pa.C.S.A. § 6108(a)(8) (emphasis added).

At the hearing, Appellee testified:

| The court: | For the days you missed work, what did you tell your employer the reason was? |
|---|---|
| Appellee: | I went in and showed them what happened. And they told me it was up to me whether I came to work or I didn't come to work. But they thought that it was not appropriate for me to be there either with the way my appearance looked. |

N.T. at 14.

Appellee said that her employer did not offer her a temporary job where she could work without having to interface with the public. *Id.* On cross-examination, Appellee admitted she was physically able to work, and that her bosses never told her to stay home. *Id.* at 12.

The trial court was persuaded by the fact that Appellee was uncomfortable resuming her job while she had bruises on her face, and that she needed time off to heal. *See* T.C.O. at 9. As such, it awarded her lost earnings.

Notwithstanding Appellant's framing of the issue as a sufficiency claim on appeal, he again means to argue that the court's decision was against the

weight of the evidence. Appellee's testimony alone, if believed, was sufficient to support her claim for lost wages. **See E.K.** 237 A.3d at 523. Appellant does not claim that Appellee presented insufficient evidence of lost earnings; rather, he claims the facts of this case did not justify the award. He claims the weight of the evidence should have yielded a different result. To prove a weight of the evidence claim, Appellant had to show that the trial court abused its discretion. Appellant must establish that the trial court's award of lost earning was manifestly unreasonable, the product of bias, ill-will, or prejudice, or a misapplication of the law. **See Ferko-Fox v. Fox**, 68 A.3d at 925. He has shown none of these.

In essence, Appellant and the trial court viewed Appellee's testimony in different lights. Appellant reasons in his brief: "It is possible, even probable that [Appellee's] employer was allowing [Appellee] to take the lead on whether and where she worked in the store and thus the employer was waiting for [Appellee] to ask where she could work in the store that did not involve the daily face-to-face with customer." **See** Appellant's Brief at 15-16.

Appellant's argument is logical, but one that can only be made to the trial court. It is not our role to reweigh the testimony and evidence. Our standard of review mandates that we review the evidence in a light most favorable to Appellee, because she was the party who prevailed below. **See B.K.P.**, 303 A.3d at 459. If we were to agree with Appellant's interpretation of the testimony, we would be viewing the evidence in a light most favorable to him, not the other way around.

One allowable inference was that Appellee's employer truly did not want her to come to work while she had blackeyes and a bruised face. Although the employer told Appellee that the ultimate decision was up to her, the employer also said that it was inappropriate for her to interact with the customers in her present state, and the employer did not offer her an accommodation. We may infer that the employer dissuaded Appellee from working. Given this inference, it was not manifestly unreasonable for the trial court to conclude that Appellee should not have to overcome both the abuse and the employer's attitude toward her appearance and resume work immediately. Thus, it was not manifestly unreasonable of the court to determine Appellee was entitled to reimbursement for her lost wages under Section 6108(a)(8).[3] We discern no abuse of discretion, nor error of law. Appellant's second issue likewise lacks merit.

In sum, we conclude that the trial court did not err or abuse its discretion when it issued a protection order lasting three years under Section 6108(d). We further conclude that the court did not err or abuse its discretion when it ordered Appellant to reimburse Appellee for her lost earnings under Section 6108(a)(8). Neither decision was against the weight of the evidence.

Order affirmed.

---

[3] We note that the trial court's award of lost earnings was a fairly significant reduction (nearly one half) from what Appellee sought to recover. Appellee claimed she missed approximately 140 hours of work, but the court determined that the testimony and evidence only supported 82 hours of lost wages. Appellee did not file a cross-appeal to challenge the amount of the award.

- 11 -

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 05/09/2024