J-S27020-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| KRISTIN ALLYN WEATHERHOLTZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DYLAN JACOB MCKELVEY | : | |
| | : | |
| Appellant | : | No. 190 MDA 2023 |

Appeal from the Order Entered January 17, 2023
In the Court of Common Pleas of Lebanon County Civil Division at No(s):
2018-40012

BEFORE:  BENDER, P.J.E., BOWES, J., and SULLIVAN, J.

MEMORANDUM BY BOWES, J.:                          **FILED MARCH 24, 2026**

Dylan Jacob McKelvey appeals from the final protection order entered on the petition filed by Kristin Allyn Weatherholtz ("Appellee") pursuant to the Protection of Victims of Sexual Violence or Intimidation Act ("PVSVIA"), 42 Pa.C.S. §§ 62A01-62A20.  On remand to us from our Supreme Court, we affirm.

Our Supreme Court summarized the relevant history thusly:

[Appellant], sexually abused [Appellee], in 2009 or 2010 when she was fourteen years old [and he was stationed in Iraq].  On January 12, 2018, [Appellee] filed her first petition for a protective order under the [PVSVIA] after she learned that [Appellant] attempted to locate her address, contact her through mutual friends, and break up her marriage.  The court granted the petition and issued a protective order prohibiting [Appellant] from having any contact with [her] for three years.  The order expired on January 18, 2021.

On June 6, 2022, [Appellee] was at a flea market with her family when she encountered [Appellant], prompting her to file a second

petition for a protective order on August 31, 2022. The same day, the trial court granted a temporary sexual violence protective order. On November 28, 2022, [Appellant] filed a motion to vacate the temporary sexual violence protective order and dismiss [Appellee]'s petition on the basis that the petition was barred by the six-year statute of limitations, which began running at the time of the initial sexual assault in 2009.

On January 13, 2023, the trial court held a hearing on the petition where both parties testified. [Appellee] first testified that [Appellant] sexually abused her in 2009 or 2010. She stated that on June 6, 2022, she was with her family setting up a stand at a flea market when [Appellant] walked within twenty feet of her, made eye contact for a few seconds, smiled, waved, and then bolted away. She conveyed that this interaction made her afraid and caused her to check her surroundings going forward. She also explained that prior to the interaction at the flea market, [Appellant had in the past] tried to contact her on numerous occasions. After the encounter at the flea market, [Appellee] testified that she definitely had more fear and anxiety as she described being very skeptical about going anywhere and would not go anywhere without someone with her. For his part, [Appellant] testified that on June 6, 2022, he was at the flea market with his friend and sister to visit another friend. [He] stated that he did not see [Appellee] at the flea market and maintained that he was talking to his friend the entire time he was there.

At the conclusion of the hearing, the trial court granted [Appellee]'s petition and entered a final protective order against [Appellant], effective until January 13, 2026.[1] On January 19, 2023, [Appellant] filed a motion for post-trial relief reiterating that [Appellee]'s action was barred by the statute of limitations and that [she] failed to provide sufficient evidence that [he] engaged in one or more acts that demonstrate a continued risk of harm to [her]. On January 26, 2023, the trial court denied [his] motion.

---

[1] Between our Supreme Court's remand and this Court's disposition, the underlying order expired. Although that arguably renders the appeal moot, we will address Appellant's remaining issues, as directed by our Supreme Court, in an abundance of caution because the existence of the final protective order may have some undetermined collateral consequences.

The court first noted that pursuant to [Pa.R.Civ.P.] 1957(b), no post-trial motions may be filed after a final order is entered under the [PVSVIA]. Additionally, the court rejected [his] statute of limitations argument, reasoning that [Appellee's] right to relief under the [PVSVIA] arose when [he] committed the acts of harassment and/or intimidation on or about June 6, 2022.

**Weatherholtz v. McKelvey**, 348 A.3d 195, 198-200 (Pa. 2025) (cleaned up).

This timely appeal followed. Both Appellant and the trial court complied with the requirements of Pa.R.A.P. 1925. On appeal, Appellant raises six issues for our consideration:

A. Did the lower court err by denying [Appellant's] motion to dismiss that cited the six-year statute of limitations applicable to the [PVSVIA]?

B. Did the lower court err by holding that the statute of limitations for the PVSVIA does not begin to run from the date of the act of sexual violence or intimidation committed by [Appellant], but rather from the date of the act or circumstances that demonstrates a continued risk of harm to the victim?

C. Did the lower court err by holding that [Appellee's] right to relief under the PVSVIA arose when [Appellant] committed an act of harassment and/or intimidation on or about June 6, 2022, despite the fact that the underlying act of sexual violence or intimidation occurred more than six years prior to the filing of the petition?

D. Did the lower court err in granting [Appellee's] request for a protective order under the PVSVIA despite [Appellee's] failure to provide evidence that she was a victim of sexual violence or intimidation of the type specifically enumerated in the definitions of those terms in 42 Pa.C.S. § 62A03?

E. Did the lower court err by finding that [Appellant's] alleged action of smiling at [Appellee] and waving constituted an act of harassment and/or intimidation that was sufficient to trigger a right to relief under the PVSVIA?

F. Did the lower court improperly grant an extension of the prior protective order that expired over a year and a half prior to the petition for relief?

Appellant's brief at 6-8 (cleaned up).

This Court previously reversed the order and dismissed the petition with prejudice because we determined, applying a six-year statute of limitations, that Appellee's 2022 petition was time-barred based upon the triggering act being the most recent act of intimidation or sexual violence as defined by the PVSVIA. *See Weatherholtz v. McKelvey*, 305 A.3d 103 (Pa.Super. 2023).

Appellee appealed that decision to our High Court. The Supreme Court reversed our ruling and ultimately remanded, concluding that "the limitation period begins to run from the date of the act or circumstance that demonstrates that a plaintiff, or appropriate individual, is at a continued risk of harm from the defendant, as this is the moment an action accrues." *Weatherholtz*, 348 A.3d at 197. The High Court's holding disposed of Appellant's first three issues in the following manner:

> [T]he continued risk of harm element is separate and distinct from the underlying act of sexual violence and intimidation, and . . . a continued risk of harm may not arise for months or years after the act of sexual violence or intimidation. Likewise, here, [Appellee]'s encounter with [Appellant] at the flea market in 2022—which occurred more than a decade after the sexual violence—increased her fear and anxiety, prompting her to seek relief under the [PVSVIA].
>
> Moreover, because a victim is able [to] prove a continued risk of harm based on the victim's own subjective fear, the point at which there is a continued risk of harm is innately tied to the victim's subjective experience and the unique circumstances of the

particular case. As a general matter, however, it is clear that a plaintiff has no basis for relief under the [PVSVIA] until the plaintiff is able to prove that he or she is at a continued risk of harm from the defendant. With no continued risk of harm, the action does not accrue, and the statute of limitations does not begin to run. Therefore, we conclude that the six-year statute of limitations for actions brought under the [PVSVIA] begins to run from the date of the act or circumstance that demonstrates that a plaintiff, or appropriate individual, is at a continued risk of harm from the defendant, as this is the moment an action accrues.

*Id*. at 208 (cleaned up). Since its disposition was limited, the Court "remand[ed] to [us] to review the remaining claims of error raised by [Appellant]." *Id*. at 210.

Hence, we begin our present review with Appellant's fourth issue. Therein, he assails Appellee's evidence that she was a victim of sexual violence or intimidation such that she could invoke the protections of the PVSVIA. *See* Appellant's brief at 27. The PVSVIA provides for the "protection of victims of sexual violence or intimidation regardless of a preexisting relationship." *E.A.M. v. A.M.D. III*, 173 A.3d 313, 316 (Pa.Super. 2017) (cleaned up). On appellate review of such protection orders, "we employ the identical standard of review that we use to review the propriety of an order entered pursuant to the Act's seasoned counterpart addressing the protection of victims of physical or sexual abuse by family members, *i.e.*, the Protection From Abuse Act ('PFA')[.]" *Id*. (cleaned up).

Applying that standard, "we must determine whether the evidence, in the light most favorable to petitioner and granting [her] the benefit of all reasonable inferences, was sufficient to sustain the trial court's determination

- 5 -

. . . by the preponderance of the evidence." **S.W. v. S.F.**, 196 A.3d 224, 228 (Pa.Super. 2018) (citation omitted). We have explained that "[t]he preponderance of the evidence standard of proof is the least demanding of the three standards of proof typically used in Pennsylvania jurisprudence. It is a more likely than not inquiry, supported by the greater weight of the evidence; something a reasonable person would accept as sufficient to support a decision." **E.A.M.**, 173 A.3d at 320 (cleaned up). Finally, assessing the "[c]redibility of witnesses and the weight accorded their testimony is within the exclusive province of the [trial court] as fact finder." **Mescanti v. Mescanti**, 956 A.2d 1017, 1020 (Pa.Super. 2008) (citation omitted).

Appellant argues that Appellee's mention of his unnamed conviction at the hearing for "a crime involving some sort of sexual assault or abuse" based upon "contact via the internet in 2009 when [Appellant] was stationed in Iraq" was insufficient to prove that she was a victim of sexual violence as defined in the PVSVIA. **See** Appellant's brief at 28. According to Appellant, the court could have only made such a conclusion if Appellee had provided details of what occurred in 2009. **Id**. at 27-28.

Contrary to Appellant's argument, "the PVSVIA requires only that a petitioner **assert** that he or she is a victim of sexual violence[.]" **E.A.M.**, 173 A.3d at 319 (emphasis added) (noting that "the mere assertion that [the petitioner] was a victim of sexual violence was sufficient to satisfy the initial

evidentiary threshold as long as the trial court found it to be credible"). The

PVSVIA defines sexual violence in the following manner:

> **"Sexual violence."** Conduct constituting a crime under any of the following provisions between persons who are not family or household members:
>
>> 18 Pa.C.S. Ch. 31 (relating to sexual offenses), except 18 Pa.C.S. §§ 3129 (relating to sexual intercourse with animal) and 3130 (relating to conduct relating to sex offenders).
>>
>> 18 Pa.C.S. § 4304 (relating to endangering welfare of children) if the offense involved sexual contact with the victim.
>>
>> 18 Pa.C.S. § 6301(a)(1)(ii) (relating to corruption of minors).
>>
>> 18 Pa.C.S. § 6312(b) (relating to sexual abuse of children).
>>
>> 18 Pa.C.S. § 6318 (relating to unlawful contact with minor).
>>
>> 18 Pa.C.S. § 6320 (relating to sexual exploitation of children).

42 Pa.C.S. § 62A03.

Appellee unequivocally met this burden when she averred at the hearing

that she was the victim of a crime of sexual assault, and the court found her

credible. Moreover, at the conclusion of the hearing, Appellant conceded that

"there is no question about" Appellee being "a victim of sexual violence

committed by [Appellant]" as required for a protection order pursuant to the

PVSVIA. *See* N.T., 1/13/23, at 21. Indeed, Appellant expressly and

repeatedly admitted that Appellee "was the victim of

Photograph/Film/Depiction on Computer sexual abuse of a minor committed

by [Appellant] in 2009." Memorandum of Law in Support of Oral Motion to Dismiss to be Made at Hearing, 1/23/23, at unnumbered 1; *see also* Motion for Post-Trial Relief, 1/19/23, at 29 (same). In other words, despite failing to cite the relevant statutory section, Appellant agreed that he was convicted of 18 Pa.C.S. § 6312(b) (titled "Photographing, videotaping, depicting on computer or filming sexual acts"), an enumerated offense of sexual violence as defined by the PVSVIA. Thus, we reject his contention that Appellee did not appropriately assert this element.

Appellant next propounds that any supposed actions on his behalf of smiling and waving at Appellee did not amount to a continued risk of harm so as to trigger relief under the PVSVIA. *See* Appellant's brief at 28. He maintains that Appellee experiencing "some moments of anxiety" was insufficient to establish a continued risk of harm. *Id*. at 29-30.

However, the PVSVIA's second prong "requires only what it says: the plaintiff must prove that he or she (or another individual) is 'at a continued risk of harm from the defendant.' 42 Pa.C.S. § 62A06(a)." *K.N.B. v. M.D.*, 259 A.3d 341, 350 (Pa. 2021). Furthermore, our High Court has explicitly held that "there is simply no textual support for the conclusion that a PVSVIA plaintiff's fear of harm must be analyzed using an objective, reasonable-person standard." *Id*. at 351 (footnote omitted).

Here, the trial court determined that Appellant's conduct in 2022 "subjected [Appellee] to a continued risk of psychological and emotional harm

to satisfy the requirements for the issuance of a final [PVSVIA o]rder." Trial Court Opinion, 3/31/23, at 8. This conclusion is amply supported by the record. Appellee testified that the interaction at the flea market made her afraid in light of Appellant's past violations of the no contact order and compelled her to thereafter check her surroundings. *See* N.T., 1/13/23, at 7, 9. On cross-exanimation, she elaborated that his smiling and waving "ma[de her] anxiety go through the roof" such that she "really didn't want to be outside" and "wouldn't go anywhere without someone with [her]." *Id*. at 10, 12. The court plainly found this testimony credible. Accordingly, Appellee established by a preponderance of the evidence a continued risk of harm from Appellant.

Appellant's last issue does not assail any action by the trial court, but rather is an anticipatory reaction if Appellee were to argue that the 2023 order was permissible as an extension of the expired 2018 order. *See* Appellant's brief at 30. Since the trial court did not treat the new petition as an extension of the expired order, we need not discuss this argument any further.

Based on the foregoing, we affirm the court's imposition of a final protection order pursuant to the PVSVIA.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date: 03/24/2026